UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:05 CR 139 |
| | ) | |
| FERNANDO SANZ et al. | ) | |

**ORDER AND OPINION**

This matter is presently before the Court on Fernando Sanz's Motion to Suppress Evidence. [Doc. 54.] Sanz seeks to suppress the large quantity of methamphetamine that was found in the bumper of his car during a police search conducted incident to a traffic stop. The issue before this Court is whether Sanz consented to the search, which I find that he did. For this reason, this Court DENIES Sanz's Motion to Suppress.

Sergeant Oscar Martinez is a 14-year veteran of the Lake County Sheriff's Department. He has been with the Highway Interdiction Unit for the past 11 years, and he is currently the deputy commander of that unit. Martinez has extensive training in the movement and concealment of narcotics along the interstate highways, and he is a certified instructor on highway interdiction. He teaches at the Indiana Law Enforcement Academy and elsewhere. Martinez is fluent in Spanish; his family spoke it in the house while he was growing up, and he still speaks Spanish when he talks to his parents.

On August 26, 2005, Martinez was patrolling Interstate 65. For reasons that are not particularly clear, he was accompanied that day by a reporter and photographer from the Northwest Indiana Times. It was not a good idea, but it was not one that Martinez came up with; his bosses instructed him to allow the media to tag along. During the ride along, the photographer was in the front passenger seat and the reporter was in the back seat. Martinez had

just completed a traffic stop and was heading back to the station, as his shift was over. While traveling northbound on Interstate 65, Sanz came up behind a green Honda Civic being driven by the defendant Fernando Sanz. As Martinez was traveling about two car lengths behind the Honda, he saw Sanz weave onto the shoulder. Martinez testified that Sanz's car was about half way over the yellow line separating the left lane and the shoulder. Martinez then observed Sanz jerk his car back into the left lane. Martinez decided to pull Sanz over because he had probable cause that Sanz committed the Indiana traffic infraction of unsafe lane movement. Martinez activated his emergency lights and pulled the Honda over.

After Sanz pulled his vehicle over to the shoulder of the roadway, Martinez exited his police cruiser and approached the driver's window of Sanz's vehicle. Martinez's police cruiser is equipped with both video and audio recording devices, including a body microphone that picks up Martinez's conversation when he is outside of the car. Thus, the entire interaction between Martinez and the defendant was video and audio recorded.

Once Martinez reached the driver's door, he informed Sanz why he was being pulled over. Upon request, the defendant produced a registration for the car and a Mexican drivers license. Martinez testified that he had never previously seen the type of Mexican driver's license that Sanz provided him. Because he saw Sanz weaving, Martinez asked if he had been drinking, and Sanz responded in the negative. During this interaction, Martinez asked a series of questions and Sanz responded appropriately to them. According to Martinez, Sanz appeared to understand English, and both the audio and videotape confirms Martinez's observation. Martinez credibly testified that Sanz was extremely nervous during their encounter – more so than most motorists who are pulled over.

Martinez asked Sanz to exit the Honda and he began writing him a warning citation. Martinez inquired who the vehicle belonged to, and Sanz said "Nicholas." During this whole time, Sanz continued acting fidgety and nervous. When Martinez asked Sanz where he and his passenger (co-defendant Thomas Prieto) were going, Sanz said they were coming from Lafayette and were going to Chicago to visit friends. A few moments later, he changed his story and said he was going to Chicago to look for a job. When Martinez asked Sanz where in particular he was going in Chicago, Sanz merely said that he was going to "Pulaski."

Martinez then went to go talk to the passenger, Prieto, and Martinez told Sanz to wait in the back of the squad car in the meantime. According to Martinez, Prieto was also extremely nervous during their encounter. Furthermore, when questioned, Prieto contradicted Sanz in at least one material way – Prieto told Martinez that he and Sanz were going to Chicago for the purpose of visiting family.

Martinez then went back to Sanz and gave him back his license and a copy of a warning ticket. At that point, Martinez told Sanz that he was free to go. Martinez and Sanz both turned and started walking towards their respective cars.

As Sanz was walking back to his car, Martinez turned around and said: "Excuse me, sir. You don't have any types of weapons or . . . types of drugs in their?" Sanz responded: "No." Martinez then asked if he could search the car, but Sanz just stared at Martinez. Everything up to this point in their encounter had been in English. Given the blank stare that Sanz was making at him, Martinez became concerned that Sanz might later claim that he did not fully understand English, so Martinez decided to repeat the question to Sanz in Spanish. For the remainder of their interaction, Martinez and Sanz spoke in Spanish.

-3-

When Martinez asked Sanz (in Spanish) if he could search the car,[1] Sanz nodded his head up and down and gestured towards the car in an "arm spreading" fashion. The video plainly shows this. At that point, Martinez asked the passenger (Prieto) to get out of the car and directed him to get into the police car (the two from the media were out of the car standing at a distance away).

Martinez began his search in the interior of the car and then inspected the outside. His attention was immediately drawn to the bumper. Martinez could tell that bumper had been tampered; he saw what looked like bondo, smear marks, and fresh paint, all hallmarks – from his experience – of a potential for a hidden compartment. He used his fingernail to scratch the bumper and this confirmed that the presence of bondo and fresh paint. He reached in the side of the bumper and felt a plastic bag full of what appeared to be narcotics. Martinez and Prieto were then placed under arrest.

The issue is whether Sanz voluntarily consented to the search of his car by nodding in the affirmative and gesturing at the car while he was nodding. First, some background. While warrantless searches are *per se* unreasonable under the Fourth Amendment, it is well-settled that an exception to warrant and probable cause requirements is a search that is conducted pursuant to consent. *United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005). The government bears the burden of proving that the consent was freely given. *Id.* The question of voluntariness is a

---

[1] There is a debate on whether Martinez said "Can I search the car?" versus "Can I look over the car?" The Court was provided three copies of transcripts of the conversations. Defense Exhibits A and C use the word "Search" while Defense Exhibit B uses the words "look over." At the hearing, the Court asked Martinez to say in Spanish exactly what he said to Sanz on the roadside. This was translated in open court by the court-retained interpreter who confirmed that the appropriate translation was the one using the word "search," which the Court chooses to credit.

question of fact to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  Factors in assessing voluntariness include the person's age, intelligence, education, mental health and capability of giving consent, whether consent was given immediately or only after repeated request by the police, whether physical coercion was used, and whether the subject was in custody. *Grap*, 403 F.3d at 443.  Consent need not be knowing and intelligent, and may be given unintentionally and without knowledge of the right to refuse consent.  *United States v. Drayton*, 536 U.S. 194, 206-07 (2002); *United States v. Saadeh*, 61 F.3d 510, 518 (7th Cir. 1995) (consent to search voluntary even though suspect was not informed of right to refuse consent).

Importantly, consent may implied.  Thus, consent to search may be manifested in a non-verbal manner. That is, both actions and words can be used to establish consent. *United States v. Villegas*, 388 F.3d 317, 324; *United States v. Raibley*, 243 F.3d 1069, 1077 (7th Cir. 2001); *United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000); *United States v. Cottam*, 88 F.3d 487, 495 (7th Cir. 1995); *United States v. Rosario*, 962 F.2d 733 (7th Cir. 1992).  In *Walls*, for example, the consent was found to be voluntary where the defendant opened the door to her house and stepped back.  Likewise, in *Rosario*, consent was found where the occupant of a hotel room opened the door to the room, gestured for the officers to enter, and then stepped back out of their way.

In this case, the audiotape has Martinez asking Sanz for consent to search the car in both English and Spanish, and the videotape shows Sanz nodding his head up and down and gesturing towards the vehicle.  These facts make this case virtually indistinguishable from the cases cited in the prior paragraph.  The only question is whether there was a language barrier in this case

-5-

that was not present in the other cases.  There was not.  The tape clearly reveals that Sanz could readily understand the English language; indeed, he answered several questions in English.  Sanz's comprehension of the English language matters little, because, as previously mentioned, Martinez also asked Sanz if he could search in Spanish as well.  This is what prompted Sanz to nod in the affirmative and gesture towards the car.

Finally, even if we were to accept Sanz's translation of what Martinez asked him – i.e., "Can I look over the car?"  instead of "Can I search the car?" – it gets Sanz nowhere.  The Court declines Sanz's implicit invitation to find that law enforcement officers must actually use the word "search" when seeking consent.  To hamstring the police in this way is both unnecessary and not supported by the law.   Indeed, Courts have been flexible with the language used by law enforcement officials when requesting consent to search.  *See United States v. Strache*, 202 F.3d 980 (7th Cir.  2000) (police conducted full search of bedroom after asking if defendant minded if they "took a look" at items in bedroom); *United States v. Rice*, 995 F.2d 719 (7th Cir. 1993) (providing consent to "look around" room authorized search of room, including small bag contained therein); *United States v. Berke*, 930 F.2d 1219 (7th Cir. 1991) (providing consent to "look" into the bag authorized full search of the bag and its contents); *United States v. Mendoza-Gonzalez*, 318 F.3d 663 (5th Cir. 2003) (providing consent to "look in" vehicle authorized general search of entire vehicle); *United States v. Pena*, 143 F.3d 1363, 1368 (10th Cir. 1998) (providing consent to "look in" the motel room reasonably included a search into the area above the bathroom ceiling); *United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (providing officer with consent "to scout around" vehicle authorized full search of vehicle, including undercarriage of vehicle)*; United States v.  Gant*, 112 F.3d 239, 242-43 (6th Cir. 1997)

(providing consent to "look" in bag authorized search of entire bag); *United States v. McRae*, 81 F.3d 1528, 1537-38 (10th Cir. 1996) (providing officer consent to "look in" vehicle authorized officer to search the entire vehicle); *United States v. Rich*, 992 F.2d 502 (5th Cir. 1993) (providing consent to "look in" truck authorized full search of vehicle); *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (providing consent to "look" in vehicle to make sure there were not any illegal drugs or weapons authorized search of luggage in trunk); *United States v. Montilla*, 928 F.2d 583 (2d Cir. 1991) (providing consent to take a "quick look" through bag authorized search of entire bag); *United States v. Boucher*, 909 F2d 1170, 1174-75 (8th Cir. 1990) (providing consent to "look in" vehicle authorized thorough search of vehicle, not just a cursory look through the windows of the vehicle); *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986) (providing consent to "look through" vehicle authorized officer to remove back seat and rear quarter panel of vehicle during search). Thus, even if we were to accept Sanz's translation of the words that Martinez used, we would still find that the consent was voluntary.

None of the other factors that we must take into consideration cause us to change that view. Consent was given immediately upon request in this case. In addition, no evidence was presented that Sanz lacks intelligence or the ability to refuse consent, no threats were made to him, and he was not in custody when he consented. In sum, Sanz consented to the search of the Honda and the motion to suppress [Doc. 54] is **DENIED**.

**SO ORDERED.**

ENTERED: January 30, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT